

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW
90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3541
cmcgrath@foley.com EMAIL

CLIENT/MATTER NUMBER
094503-0101

June 17, 2009

**VIA ECF**

The Honorable Kathleen Tomlinson
U.S. Magistrate Judge, E.D.N.Y.
100 Federal Plaza
Central Islip, New York 11722

      Re:    Chord Associates et al. v. Protech 2003-D et al., Case No. 07-cv-5138

Dear Judge Tomlinson:

      We write on behalf of Defendants to update your Honor on events relating to Defendants' letter motion directed to Roland Conde (Docket No. 91) in advance of the upcoming conference on June 19, 2009.

      In our May 28, 2009 letter motion requesting a conference on this and other discovery issues (Docket No. 103) we provided your Honor with an update and reported that Mr. Conde had agreed to appear for deposition on June 2 and 3. However, he has not appeared for deposition and has raised the excuse of illness. The facts relating to this are as follows.

      Notwithstanding Mr. Conde's agreement to appear for deposition on Tuesday June 2, on Sunday, May 31, Plaintiffs' counsel (who is also Mr. Conde's counsel) inadvertently emailed an outdated doctor's note for Mr. Conde and subsequently explained that he was attempting to ascertain whether Mr. Conde's doctor's alleged concern about his stress level would impact his deposition. In a conference with your Honor the next day, Monday June 1, regarding the location of depositions, we pointed out that due to the last minute request for a change of the noticed venue we needed a day to find a suitable location in Nassau county. Accordingly the schedule slipped by a day and the first day of Mr. Conde's deposition was slated for Wednesday, June 3. At 4:30 on Tuesday, June 2, Mr. Conde's counsel reported that Mr. Conde would not be available for deposition the following day due to an appointment with his doctor. Mr. Conde's counsel also suggested that that there would be issues in any event relating to Mr. Conde's medication for his heart condition and his doctor's advice. Although Mr. Conde's counsel suggested rescheduling the deposition days, we subsequently received a fax on June 5, 2009 of a doctor's note that appears to read: "As a result of Mr. Conde's condition his participation in any litigation related activity is markedly contraindicated at this time. I will continue to monitor his condition appropriately." The date on the faxed note is smudged, and appears to read June 3, 2008 or 2009 – we have requested the original.

      We have requested back up for Mr. Conde's claim that his failure to appear is excused, and for purposes of planning a way to obtain the discovery we seek that accommodates any bona fide medical concerns. To date no such information has been provided. To the extent that Mr. Conde or Plaintiffs argue that they are entitled to withhold such information based on events relating to Defendants' witness Richard Williams, their argument is without merit. As set forth in our May 29

BOSTON           JACKSONVILLE     MILWAUKEE       SAN DIEGO            SILICON VALLEY
BRUSSELS         LOS ANGELES      NEW YORK        SAN DIEGO/DEL MAR    TALLAHASSEE
CHICAGO          MADISON          ORLANDO         SAN FRANCISCO        TAMPA
DETROIT          MIAMI            SACRAMENTO      SHANGHAI             TOKYO
                                                                       WASHINGTON, D.C.



response to Plaintiffs' cross motion (Docket 105), Plaintiffs cancelled Mr. Williams' deposition at the last minute, and subsequently Mr. Williams left for medical leave. Accordingly, Plaintiffs waived this and other depositions and, most pertinently for this issue, Mr. Williams (who lives in California) is not within Defendants' control as a result of his leave.

Mr. Conde presents an entirely different circumstance, particularly since your Honor has already granted Defendants' first motion to compel Mr. Conde to comply with his subpoena. The timing of Mr. Conde's newly asserted excuse for non-appearance raises questions, as does the generalized nature of his doctor's note. Particularly given the circumstances leading up to today, Mr. Conde should be required to provide sufficient information for the Court to make a determination of his ability to appear for deposition, and mere conclusory statements should not suffice. See, e.g., Gurary v. Nu-Tech Bio-Med, 303 F.3d 212, 225 (2d Cir. 2002), cert. denied 538 U.S. 923 (2003) (refusing to reduce sanctions against party claiming he "contracted a disabling disease" where party "refused to submit financial statements, medical bills, and other documents which would allow the court to assess the impact of his health problems… and did not establish that the sanction would create an unreasonable burden"); Bambu Sales v. Ozak Trading, 58 F.3d 849, 851 (2d Cir. 1995) (granting default judgment in spite of defendant's claim that a "grave illness" prevented him from complying with court's discovery order where defendant failed to provide sufficient details or documentary evidence concerning his medical condition); Burgie v. Euro Brokers, Inc., 2006 U.S. Dist. LEXIS 22433, 35 (E.D.N.Y. 2006) (sanctioning attorney who repeatedly ignored the court's discovery orders while asserting that her physical condition prevented her from complying where she failed to submit documentation of her illness).

Mr. Conde's document response to the subpoena also remains deficient. On May 31, Mr. Conde produced approximately 200 pages of documents (a third of which consists merely of copies of the contracts for the general contractors and architect for the Belmont project, two contracts between plaintiffs and defendants, and defendants notices of removal of plaintiffs from Belmont Villas LLC). Notably, Mr. Conde has not produced any documents responsive to the vast majority of defendants' document requests, including any documents concerning agreements between Mr. Conde and Ms. Saepia relating to Belmont, documents relating to Mr. Conde's bankruptcy proceedings, documents concerning Racanelli's payments to Mr. Conde's companies and/or Racanelli's investment in Mr. Conde's East First Street property during the time period of the Belmont project, Mr. Conde's indictment and subsequent inability to apply for low-income housing tax credits, Mr. Conde's interests in various companies in connection with a property in Melville, New York, Mr. Conde's acquisition and disposition of the Belmont property through his company, Lakeside Villas, or documents concerning Ms. Saepia's other low-income housing project known as Krystie Manor. Further, Mr. Conde has produced only a single e-mail between himself and Ms. Saepia, despite the existence of many more, as is evident from Plaintiffs' document production. Accordingly, Mr. Conde's document production is severely deficient and Mr. Conde still has failed to comply with the subpoena.



**FOLEY & LARDNER LLP**

Honorable Kathleen Tomlinson
June 17, 2009
Page 3

Respectfully,

*Catherine McGrath/rck*

Catherine McGrath

cc:   Andrew Donner, Esq. (via ECF and electronic mail)