

**FOLEY & LARDNER LLP**

June 17, 2009

ATTORNEYS AT LAW
90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3541
cmcgrath@foley.com EMAIL

CLIENT/MATTER NUMBER
094503-0101

**VIA ECF**

The Honorable Kathleen Tomlinson
U.S. Magistrate Judge, E.D.N.Y.
100 Federal Plaza
Central Islip, New York 11722

    Re:    Chord Associates et al. v. Protech 2003-D et al., Case No. 07-cv-5138

Dear Judge Tomlinson:

    We write on behalf of Defendants to supplement Defendants' motions to compel as to Plaintiffs (Docket Nos. 86 and 90) based on the deposition of Plaintiff Barbara Saepia on June 9, 10 and 11, 2009.

    First, Plaintiffs improperly cut the depositions short, and Defendants for this and other reasons request additional time to depose Ms. Saepia. Although Plaintiffs agreed to produce Ms. Saepia for three days, they unilaterally ended the testimony early.[1] As a result of this and other disruptions (including lengthy speaking objections and obstruction by the witness), Defendants were unable to complete the depositions and request a further day. A fourth day would not be excessive even without Plaintiffs' disruptive conduct given that Ms. Saepia is an individual Plaintiff and the sole 30(b)(6) representative of each of her three companies. Further, as addressed in Defendants' motion to compel Plaintiffs' document production (Docket No. 90), Plaintiffs have failed to produce several categories of responsive documents and largely gave "I do not recall" answers throughout the deposition. Should additional documents be produced, additional deposition time would be necessary for this additional reason.

    Second, Plaintiffs appear to be raising a defense of reliance on counsel in connection with, among other things, their failure to sign the extension agreement for the Belmont Villas financing. This is material, as Defendants allege that this failure constituted a breach and repudiation of Plaintiffs' contract and common law duties that justified the immediate removal of Chord as the Belmont Villas managing member. Plaintiffs allege that Chord's removal on this basis was wrongful and contend that they did not sign the agreement because they needed certain financial and other information to which they did not have access. During the deposition, Ms. Saepia several times stated that she acted on advice of counsel, and several times used that defense in refusing to answer whether her actions in connection with the extension were intentional:

    Q.  Ms. Saepia, is that why you didn't sign the Fannie Mae letter?

---

[1] According to the court certified videographer, Ms. Saepia testified for 4 hours 52 minutes the first day and less than 7 hours on the second and third days. Although Plaintiffs agree that Rule 30 provides for 7 hours of actual deposition time exclusive of reasonable breaks, they refused Defendants' requests to arrive earlier, stay later or make up the time on Friday June 12.

BOSTON         JACKSONVILLE   MILWAUKEE   SAN DIEGO         SILICON VALLEY
BRUSSELS       LOS ANGELES    NEW YORK    SAN DIEGO/DEL MAR TALLAHASSEE
CHICAGO        MADISON        ORLANDO     SAN FRANCISCO     TAMPA
DETROIT        MIAMI          SACRAMENTO  SHANGHAI          TOKYO
                                                            WASHINGTON, D.C.



Honorable Kathleen Tomlinson
June 17, 2009
Page 2

    A.   I did not sign the Fannie Mae letter because I could not sign it. I had not received financial information which I felt was needed to be given to me before I could sign such a thing because I was making statements in it. I felt that Capmark could sign or one of the entities could sign and on the advice of counsel I was advised not to sign the agreement.[2]

* * *

    Q.   Isn't it the case you intentionally did not ask for information in connection with this form of extension agreement?

    A.   I behaved under the advice of counsel.

    Q.   Is it your [contention] that your behavior one way or another with respect to asking for information after getting this August 9th 2007 letter was [on] advice of counsel?

    A.   I acted in accordance with advice of counsel.[3]

* * *

    Q.   Do you recall receiving an e-mail from Richard Williams on or about September 19th to you saying "Barbara, it has come to my attention that you have not signed and returned the extension agreement extending the Fannie Mae construction phase financing agreement for another six months to April 15, 2008. It's important that you complete this requirement as soon as possible so that this extension will be completed in a timely fashion rather than at the last minute as was the case for the last extension. Your immediate attention to this matter will be greatly appreciated." Do you recall receiving that?

    A.   I believe I did.

    Q.   You didn't respond to this either, did you?

    A.   I don't recall responding to this.

    Q.   In fact it was a deliberate decision on your part not to respond to this, isn't that so, Ms. Saepia?

    A.   I don't recall responding to this and I don't appreciate your categorizing.

    Q.   Was there any reason not to respond to this, Ms. Saepia?

    A.   I was acting under the advice of counsel.

    Q.   Is that why you didn't respond to this, Ms. Saepia?

    A.   I'm saying that I was acting under the advice of counsel.

    Q.   I'm not asking you to tell me today what the advice was, but as you sit here today do you remember what that advice was?

---

[2] Rough transcript of the June 11, 2009 deposition of Barbara Saepia, at 237.

[3] June 11 Rough Tr. at 238.



Honorable Kathleen Tomlinson
June 17, 2009
Page 3

    A.   Yes, I do.[4]

    Ms. Saepia's invocation of "advice of counsel" waives the privilege with respect to the advice at issue, and Defendants are entitled to all documents related to the asserted opinions of counsel, as well as testimony concerning those topics. Waiver of the privilege occurs where, as here, a party puts the communication with counsel at issue with respect to a claim or defense, and preserving the privilege would deny the opposing party access to vital information. <u>Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.</u>, 1995 WL 598971 (S.D.N.Y. 1995) (where defendants sought to defend against claims of knowing or intentional conversion by asserting reliance on the opinion of counsel as to the transactions, defendants waived the privilege as to that subject). Plaintiffs cannot use the privilege as both a "shield and a sword," and the "privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1292 (2d Cir. 1991) (where defendant's intent was in issue in the litigation, and defendant testified that he took his actions on advice of counsel, defendant placed counsel's advice in issue and waived the privilege); <u>see also</u> <u>Weizmann Inst. of Sci. v. Neschis</u>, 2004 WL 540480 (S.D.N.Y. 2004) (holding plaintiffs waived attorney-client privilege where plaintiffs defended against a claim of estoppel by asserting that they felt compelled, based on counsel's advice, to participate in an arbitration, thereby placing the advice in issue and making it unfair to withhold privileged communications from defendants).

    Here, Plaintiffs raise "advice of counsel" in connection with a vital issue – i.e., whether their failure to sign the extension agreement was intentional, and whether it was, as suggested by a retainer letter that Plaintiffs put forward, a tactical move to "force" Defendants to pay money or provide other benefits to Plaintiffs. Indeed, Plaintiffs' affirmative use of the retainer letter which outlines their "goal" in connection with the extension agreement itself constitutes a waiver of any privilege on this subject.[5]

    Accordingly, plaintiffs should be required to produce all communications with counsel (including communications with Helen Chaitman, Bruce Kaplan or Roy Lester) and appear for further deposition on this issue. Alternatively, even if Plaintiffs are not asserting reliance on the advice of counsel, defendants are entitled to obtain answers to the questions avoided by the "advice of counsel" answer.

                                          Respectfully,

                                          Catherine McGrath

cc:   Andrew Donner, Esq. (via ECF and electronic mail)

---

[4] June 11 Rough Tr. at 245-47.

[5] A copy of the August 2007 retainer letter is attached.

**BRUCE H. KAPLAN, ESQ.**
**5 Carman Court**
**Dix Hills, New York 11746**
**(631) 470-2111**
**Cell: (646) 554-4626**
**Fax: (631) 980-3536**
brucehkaplan@optonline.net

August 27, 2007

Ms. Barbara Saepia
Belmont Villas, LLC
Chord Associates, LLC
Jopal Enterprises, LLC
865-37 County Line Road
Amityville, New York 11701

    Re:    Letter of Engagement
              <u>Litigation against Capmark Finance, Inc. /GMAC, and related entities ("Capmark")</u>

Dear Barbara:

        This letter of engagement is furnished to you in accordance with Part 1215 of the Joint Rules of the Appellate Division. Having reviewed with you the Statement of Client's Rights and the Statement of Client's Responsibilities, I have undertaken your representation in connection with the matter(s) described below:

SCOPE OF REPRESENTATION

        The scope of this engagement covers my draft, assembly and finalization of a "courtesy complaint" against Capmark alleging, *inter alia*, breach of contract, negligence, fraud, *et al.* in connection with Capmark's mismanagement of the development of the 164 unit apartment complex known as Belmont Villas located at 500 Bonnie Lane, North Babylon, New York ("Project"). You have advised me that I will be working in an "of counsel" relationship with Helen Chaitman Esq., of Philips Nizer, who will assist in the preparation of the complaint, and that Philips Nizer will appear as counsel of record and, presumably negotiate with Capmark and/or its counsel.

        Our goal is to force Capmark to agree to assume the costs of its mismanagement of the Project by: reducing one or more of its Project capital accounts; reducing the amount of the Project's construction loan mortgage as mortgagee; reducing or eliminating the personal guarantee of Barbara Saepia; and/or paying you some, if not all, of the damages set forth in the Holland & Knight letter to Capmark dated April 18, 2007 and/or any other damages that might be asserted against Capmark by way of the courtesy complaint ("Complaint").

        Further, you have advised me that Fannie Mae, at Capmark's request, has by letter dated August 9, 2007 and received by you on August 22, 2007, requested that you execute a request

Ms. Barbara M. Saepia
August 27, 2007
Page 2 of 3

for extension of the long-term financing commitment on or before October12, 2007. I will require the assistance of Roland Conde to amass the facts and exhibits to be included in the Complaint in order to meet this deadline in a timely fashion.

FEES, EXPENSES AND BILLING PRACTICE                      *$10,000 BHC*

In return for your payment to me now of $25,000 ~~*$10,000 BHC*~~ I have agreed to draft, assemble, and present with Philips Nizer the Complaint to Capmark. In the event additional time is required to proceed with the litigation beyond that, you agree to pay me the rate of $250/hour, for which you shall be billed monthly. In addition, you will be responsible for all costs and disbursements, which include photocopies, postage, Federal Express, filing fees, service of process, messenger, etc. Not included in the scope of this agreement are services you may request of me in connection with any other matter, action or proceeding.

ARBITRATION

In the event that a dispute arises between us relating to my fees, you may have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts, a copy of which will be provided to you upon request.

If the foregoing accurately represents our understanding, please acknowledge your consent(s) to my representation and acceptance of the foregoing terms by signing the enclosed counterpart(s) of this letter where indicated below, and returning to me. I thank you for the opportunity to be of service to you in this matter.

Very truly yours,

Bruce H. Kaplan

ACKNOWLEDGED AND AGREED:

BELMONT VILLAS LLC

By: _____
    Chord Associates LLC
    Managing Member

Dated: August     , 2007

Ms. Barbara M. Saepia
August 27, 2007
Page 3 of 3

    CHORD ASSOCIATES LLC

    By: _____
      Barbara M. Saepia
      Managing Member

Dated: Sept. 5, 2007

    JOPAL ENTERPRISES, LLC,

    By: _____
      Barbara M. Saepia
      Managing Member

Dated: Sept. 5, 2007

    _____
    Barbara M. Saepia

Dated: Sept. 5, 2007