# BRUCE H. KAPLAN, ESQ.
**44 Wall Street, 12th Floor**
**New York, New York 10005**
**(212) 639-9000**
**Fax: (212) 658-9747**
**brucehkaplan@gmail.com**

November 23, 2009

The Honorable Joseph F. Bianco
The Honorable A. Kathleen Tomlinson
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 920
Central Islip, NY 11722

      Re:    Chord Associates, LLC *et al*. v. Protech 2003-D, LLC *et al*.
               EDNY Case No. 07 CV 5138 (JFB/KAT)

Dear Judges Bianco and Tomlinson:

      I request your indulgence with respect to this sur-reply response in connection with counsel for Defendants' request to suspend this case due to the Capmark bankruptcy filings so as to respond to counsel for Defendants' letter dated November 19, 2009.

**A.**    **Loss of Low Income Housing Tax Credits**

      I must respond to the misleading statement set forth in Ms. McGrath's letter that, "the tax credits are not 'burning' as Mr. Kaplan claims". In fact, because the Belmont Villas project received its initial Certificates of Occupancy in 2009, it was "placed in service" and thus the "meter starts running" in 2009 on Belmont's Low-Income Housing Tax Credits under Internal Revenue Code §42, Subtitle A, Chapter 1, Subchapter A, Part IV, Subpart D (f)(1)(A), or it will commence running on January 1, 2010 under (f)(1)(B), which provide in relevant part as follows:

> (f) Definition and special rules relating to credit period.
>
> (1) Credit period defined. For purposes of this section, the term "credit period" means, with respect to any building, the period of 10 taxable years beginning with--
>
> (A) the taxable year in which the building is placed in service, or
>
> (B) at the election of the taxpayer, the succeeding taxable year, but only if the building is a qualified low-income building as of the close of the 1st year of such period. The election under subparagraph (B), once made, shall be irrevocable.

The Honorable Joseph F. Bianco
November 23, 2009
Page 2

So while it is likely that Belmont has elected the second option, and thus Ms. McGrath would be technically correct, and will be for the next 38 days, *i.e.,* that the credits are not *yet* "burning", they will commence such incineration on January 1, 2010, and thus your attention is required. Indeed, what I had stated in my letter dated November 11, 2009 was that the tax credits "will start to 'burn' unused at an annual rate of $1,109,687" commencing January 1, 2010; thus I did not claim that they are *now* "burning."

**B.      Extension of Automatic Stay**

Similar dissection of Ms. McGrath's wordplay may also be performed with respect to her arguments with respect to extension of the automatic stay to non-debtors by utilizing the concept of "disaggregation" as enunciated by the Third Circuit, where the Capmark bankruptcies are pending, in Maritime Electric Company Inc v. United Jersey Bank, 959 F2d 1194 (3d Cir. 1992):

> All proceedings in a single case are not lumped together for purposes of automatic stay analysis. Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case. Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay. (Emphasis added).

With respect to the extension of the automatic stay discovery regarding non-debtor third-parties, Ms. McGrath argues that:

> The third parties [from whom discovery is sought] include the entity with whom Defendants had been in negotiation for the sale of the Belmont Villas project, and the management company that is currently operating the project.

Of course, there is no stay of action against non-debtor parties to litigation. Teachers Ins. and Annuity Assn v. Butler, 803 F. 2d 61, 65 (2d Cir. 1986). This is true even if those other parties are in a similar legal or factual nexus with the debtor. Seiko Epson Corp.v. Nu-Kote International, Inc., 190 F.3d 1360, 1364 (Fed Cir. 1999). Moreover, the referenced negotiations could not occur if the non-debtor Plaintiffs Amtax Holdings 520, LLC, Protech 2003-D, LLC and Protech Holdings 128, LLC ("Membership Entities") had filed for bankruptcy, as the filing of a bankruptcy petition by one or more of the Membership Entities would constitute an event of default under many, if not all, of the Loan Documents, thus further jeopardizing the Project's tax-exempt bond financing and Low-Income Housing Tax Credits ("Project Financing").

Counsel continues:

The Honorable Joseph F. Bianco
November 23, 2009
Page 3

> As in the case of any other situation in which a party to a litigation has commenced a bankruptcy case, a suspension of the the District Court action will not pose any extraordinary delay or prejudice.

Here, the three principal Defendants-Counterclaim Plaintiffs, the Membership Entities, have not "commenced a bankruptcy case." For Your Honors' review, attached hereto as is the Notice of Commencement of Chapter 11 Cases filed by the Capmark debtors **(Exhibit 1)**; none of the Membership Entities are listed therein. Indeed, the gravamen of Plaintiffs' complaint – their unlawful removal(s) from the Project – were performed by non-debtor Protech 2003-D, *see*, Notice of Removal dated October 10, 2007 **(Exhibit 2);** and, by non-debtor Protech Holdings 128, LLC, *see* letters terminating Development Agreement dated November 7, 2007 **(Exhibit 3)**.

In fact, Counterclaim Plaintiffs themselves agree as to the essence of the case as evidenced by ¶139 of their Answer to First Amended Complaint [Docket No. 101] which provides:

> 139. By this action, Counterclaim-[Plaintiffs][sic] seek damages in an amount to be determined at trial, but in no event less than $28 million, injunctive relief and a judicial declaration that Counterclaim-Defendants have no rights or authority in connection with the Project, and that the rights and authority previously delegated to Counterclaim-Defendants are vested in Counterclaim-Plaintiffs Protech 2003-D, LLC ("Protech 2003-D") and Protech Holdings 128, LLC ("Protech Holdings").

Counsel provides further justification for her request to include the non-debtor Membership Entities within the coverage of the automatic stay as follows:

> It is equally clear that there is a compelling need for hiatus now so that Debtors can attend to more pressing matters in their chapter 11 case and the bankruptcy court and not be compelled to defend the special purpose entities here in contravention of the automatic stay.

The defense of the special purpose entities would only be in contravention of the automatic stay if such entities had filed bankruptcy and were covered by the automatic stay. They have not, and indeed cannot without jeopardizing the Project Financing, which is "inextricably interwoven" with the sale negotiations which have occurred, and which Defendants seek to engage in with Freddie Mac in an attempt to replace the lapsed Fannie Mae credit enhancement of the tax-exempt bonds. That it may be an inconvenient time for Defendants to make their request to the bankruptcy court to extend the stay to non-debtors on this less pressing matter should have no bearing on this Court's decision, nor affect non-debtor litigants in any manner.

Further, the automatic stay does not apply to discovery sought from the debtor regarding claims by or against a non-debtor party, even where that information could adversely

The Honorable Joseph F. Bianco
November 23, 2009
Page 4

affect the debtor. In re Miller, 262 B.R. 499, 505 (9th Cir. B.A.P. 2001); In re Hillsborough Holdings Corp., 130 B.R.. 603, 605 (Bkrtcy. M.D. Fl. 1991). Further, it is unlikely that Defendants' principal witnesses, David Sebastian, Frank Guzauskas, and Phil Pavlovich, none of whom are listed as senior officers or directors on Capmark Financial Group's 2008 Form 10-K **(Exhibit 4),** are charged with the responsibility of overseeing the Capmark Financial Group's reorganization. In re Johns-Manville Corporation, 41 B.R. 926, 932 (Bkrtcy. S.D.N.Y. 1984)(Court not persuaded that permitting limited discovery would bring about so disruptive an effect upon debtor's reorganization efforts as to condone the imposition of an injustice upon others).

Lastly, with respect to the issue of bifurcation, Defendants appear to be asking that the Court substantively consolidate the non-bankruptcy cases of the non-filing Membership Entities, which, like Capmark Bank, appear to have been purposely omitted from the filing, with those of the three relevant Capmark debtor-Defendants among the 48 entities that have filed. Substantive consolidation allows bankruptcy courts to combine the assets and liabilities of separate and distinct (but related) legal entities into a single pool and treat them as though they belong to a single entity. I direct Your Honors' attention to Order Pursuant to Bankruptcy Rule 1015-1 Directing Joint Administration of [Capmark] Debtors Chapter 11 Cases **(Exhibit 5)** which provides in relevant part at p. 13 as follows:

> ORDERED that nothing in contained in this Order shall be deemed or construed as directing or otherwise effecting the substantive consolidation of any of the above-captioned cases. . . .

As the referenced order demonstrates, resort to consolidation, where there has been a commingling of several firms' assets and business functions, "should not be Pavlovian". In re Augie/Restivo Baking Co. Ltd., 860 F.2d 515 (2d Cir. 1988), *citing*, Chemical Bank New York Trust Co. v. Kheel,  369 F.2d 845, 847 (2d Cir.1966).  *Accord*, In re Owens Corning, 419 F.3d 195 (3d Cir. 2005) (To justify substantive consolidation, pre-petition entities disregarded separateness so significantly that their creditors relied on the breakdown of entity borders and treated them as one legal entity). Defendants' argument is essentially the utilization of the doctrine of "piercing the corporate veil" in reverse, and as a shield rather than a sword so as to aggregate the Defendants, whereas pre-petition the separate existence of the Membership Entities had been strictly maintained, and was in fact a cornerstone of the project at issue, as it is in any single-asset real estate deal.

Accordingly, for the foregoing reasons, it would be inherently unfair to have the entire case held "in suspense", and thus Plaintiffs respectively suggest that Your Honors allow the case to continue up to the point of judgment, but stay any execution thereof against debtor-Defendants.   Again, thank you for your indulgence and attention.

Very truly yours,

Bruce H. Kaplan