UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CHORD ASSOCIATES LLC, JOPAL
ENTERPRISES LLC, and BARBARA
M. SAEPIA,

                            Plaintiffs,

      -against-

PROTECH 2003-D, LLC, AMTAX HOLDINGS 520,
LLC, PROTECH HOLDINGS 128, LLC, CAPMARK
AFFORDABLE EQUITY HOLDINGS INC.,                     CV 07 5138 (JFB)(AKT)
CAPMARK FINANCE INC. (formerly known as
GMAC COMMERCIAL MORTGAGE                             ECF Case
CORPORATION), its successor and assigns, and
CAPMARK CAPITAL INC. (formerly known as
GMAC COMMERCIAL HOLDING
CORPORATION), its successors and assigns,

                            Defendants.
      -AND-

AMTAX HOLDINGS 520, LLC, PROTECH 2003-D,
LLC, CAPMARK FINANCE INC., CAPMARK CAPITAL,
INC. and PROTECH HOLDINGS 128, LLC,

                         Counterclaim-Plaintiffs,
      -against-

CHORD ASSOCIATES LLC, BARBARA M.
SAEPIA, JOPAL ENTERPRISES LLC, JOPAL
ASSOCIATES INC. and ROLAND CONDE,

                         Counterclaim-Defendants.

-----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY
## WILDER BALTER PARTNERS INC.'S MOTION TO QUASH SUBPOENA

C&F: 1348638.3

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ................................................................................................................................3

THE SUBPOENA IS OVERBROAD ON ITS FACE,
UNDULY BURDENSOME, REQUESTS DOCUMENTS
NOT RELEVANT TO THE SUBJECT MATTER OF THIS
LITIGATION AND WHOLLY IMPROPER ..............................................................................3

    A.    Conde's Request For Documents Pertaining To
Non-party WBP's Long-Since Completed and Wholly
Irrelevant Brookview Project Is A Request For
Documents That Have No Bearing On This Litigation.....................5

    B.    Conde's Remaining Document Requests Are Manifestly
Overbroad, And Compliance Therewith Would Place An
Undue Burden on WBP ........................................................................8

CONCLUSION ...........................................................................................................................12

C&F: 1348638.3

# TABLE OF AUTHORITIES

Page

**CASES**

403-411 East 65th Street Corp. v. Ford Motor Co., 27 F.Supp. 27 (D.C.N.Y. 1939) ............ 9

Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, 40 F.R.D. 318 (D.C.1966) ......................... 10

Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44 (S.D.N.Y. 1996) ....... 4, 7, 9, 10, 11

In re Honeywell Intern., Inc. Securities Litigation, 230 F.R.D. 293 (S.D.N.Y. 2003) .......... 9

In re Penn Central Commercial Paper Litigation, 61 F.R.D. 453 (S.D.N.Y. 1973) ............ 10

Night Hawk Ltd. v. Briarpatch Ltd., L.P., 2003 WL 23018833 (S.D.N.Y. 2003) ............. 7, 9

Salvatorie Studios, Int. v. Mako's Inc., 2001 WL 913945 (S.D.N.Y. 2001) ......................... 7

United States v. International Bus. Mach. Corp., 83 F.R.D. 97 (S.D.N.Y. 1979) ............ 5, 9

U.S. v. E. I. Du Pont De Nemours & Co., 14 F.R.D. 341 (N.D.Ill.1953) ........................... 10

**RULES**

Fed.R.Civ.P. 26 ...................................................................................................................... 3

Fed.R.Civ.P. 45 ................................................................................................................... 4, 6

C&F: 1348638.3

## PRELIMINARY STATEMENT

A review of the pleadings reveals that this action was commenced by the Plaintiffs against the Defendants for various claims concerning the construction of a 164-unit senior housing project known as Belmont Villas in West Babylon, New York. Specifically, the Plaintiffs have asserted claims stemming from the Defendants' alleged breach, mismanagement and failure to properly perform under various contracts and other agreements relating to the completion of Belmont Villas. None of this has anything to do with non-party Wilder Balter Partners, Inc. ("WBP").

In response to the Plaintiffs' Complaint, the Defendants have asserted a variety of counterclaims against both the Plaintiffs and, as particularly relevant to this Motion, against Counterclaim-Defendant Richard Conde ("Conde") for fraud and aiding and abetting fraud. Through these counterclaims, the Defendants claim that the Plaintiffs are the ones that breached the relevant contracts and other agreements relating to Belmont Villas, and that it is the Plaintiffs and Conde that committed acts of mismanagement and fraud in connection with the development of Belmont Villas. Again, like the Plaintiffs' claims against the Defendants, the Defendants' claims against the Plaintiffs and Conde (and the facts and circumstances relevant to those claims) have absolutely nothing to do with WBP.

In response to the counterclaims asserted against him by the Defendants, Conde asserted his own counterclaims against the Defendants. Among Conde's counterclaims is (i) a claim for defamation arising from statements made by the Defendants in their Answer to the First Amended Complaint and Amended Counterclaims, as well as statements allegedly made to a third party, specifically the Rechler Group, and its representatives, (ii) a claim for "False Light Invasion of Privacy," which appears duplicative of his defamation claim, and (iii) a claim for

1

vexatious litigation. Neither Conde's counterclaims, nor the facts and circumstances relevant to those counterclaims, have anything at all to do with WBP.

After the parties to this litigation were involved in their dispute, the Belmont Villas project was put on the market for sale. For a time, WBP entertained the possibility of purchasing the Belmont Villas project, although no transaction was consummated.

Despite WBP's status as a disinterested nonparty to this litigation that was never involved in any of the circumstances giving rise to any of the counterclaims asserted by or against Conde, Conde has served WBP with a subpoena (the "Subpoena") improperly seeking a vast array of documents pursuant to a series of document requests (the "Document Requests") that are entirely overbroad, exceedingly burdensome and wholly irrelevant to these counterclaims.

For example, approximately half of Conde's Document Requests demand documents pertaining to an unrelated project known as Brookview Commons ("Brookview"), in which none of the parties to the litigation were involved. Brookview was a 208 unit affordable senior housing project that WBP completed eight years ago, in 2002. None of the parties to this litigation were involved in the Brookview project, and the Brookview project has nothing to do with the claims asserted in this action. Nonetheless, Conde has demanded, inter alia, that WBP produce copies of leases concerning units at Brookview, copies of certificates of occupancy for units at Brookview, marketing materials pertaining to Brookview, and other equally irrelevant documents. Succinctly stated, Brookview has absolutely nothing to do with Belmont Villas and WBP should not be required to produce these documents.

Conde's Subpoena also seeks to have WBP produce irrelevant documents that relate to WBP's consideration of acquiring the Belmont Villas project. These requests represent a classic

C&F: 1348638.3

case of a "fishing expedition" and are patently overbroad and unduly burdensome even though they relate to Belmont Villas.

The Subpoena also seeks to take the deposition of a corporate representative of WBP even though, as previously stated, WBP has absolutely nothing to do with the counterclaims asserted by or against Conde.

In light of the foregoing, it is respectfully submitted that an Order should be issued in WBP's favor, quashing the subpoena or, alternatively, modifying the subpoena as the Court might instead deem just and proper.

## ARGUMENT

### THE SUBPOENA IS OVERBROAD ON ITS FACE, UNDULY BURDENSOME, REQUESTS DOCUMENTS NOT RELEVANT TO THE SUBJECT MATTER OF THIS LITIGATION AND WHOLLY IMPROPER

Rule 26 of the Federal Rules of Civil Procedure sets forth the "General Provisions Governing Discovery" for civil suits in the federal courts. It authorizes parties to obtain "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action," and all information "reasonably calculated to lead to discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Rule 26(c), however, curtails this power by providing that:

> [u]pon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the disclosure or discovery not be had;

>  (2) that the disclosure or discovery may be had only on specified terms and conditions.

Fed.R.Civ.P. 26(c).

Rule 45 provides a corresponding level of protection for persons subject to subpoena. In this regard, Rule 45(c)(1) provides that:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

Fed.R.Civ.P. 45(c)(1).

Rule 45(c) further provides that a court "shall quash or modify the subpoena if it . . (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(c)(2)(B), (c)(3)(A)(iv).

Whether a subpoena imposes upon a witness an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996). "In addition, the status of a witness as a non-party to the underlying litigation "entitles [the witness] to consideration regarding expense and inconvenience." Id., citing Fed.R.Civ.P. 45(c)(2)(B) ("an order to compel production shall protect any person who is not a party from significant expense....").

Here, the Subpoena is clearly overbroad on its face. Many of the requests bear no relation to this litigation and call for production of documents with no direct relationship to the counterclaims asserted by and against Conde. Moreover, based on the volume of potentially responsive documents and the substantial time that WBP's employees and attorneys would need

4

to devote in helping to collect and review these documents, completing this task would result in a substantial diversion of resources.

"To the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable.'" Id. at 50, citing United States v. International Bus. Mach. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979). By his drafting of the Subpoena, Conde has "run this risk and lost." Id.

### A. Conde's Request For Documents Pertaining To Non-Party WBP's Long-Since Completed and Wholly Irrelevant Brookview Project Is A Request For Documents That Have No Bearing On This Litigation

Document Requests 7, 8, 9, 10 and 11 are clear examples of the unduly burdensome and entirely irrelevant nature of Conde's demands upon WBP, a non-party that has absolutely nothing to do with any of the claims asserted by the Defendants against Conde and vice versa. Specifically, Documents Requests 7 through 11 demand, as follows:

> 7. All Section 8 and non Section 8 leases for each rental unit described as either two bedroom or one bedroom plus bedroom/den located in Brookview, as depicted in the Wilder Balter website.
>
> 8. All Certificates of Occupancy for each rental unit described as either two bedroom or one bedroom plus bedroom/den located in Brookview, as depicted in the Wilder Balter website.
>
> 9. All documents and communications concerning the marketing and/or pricing of the one bedroom plus bedroom/den as a two bedroom alternative located in Brookview.
>
> 10. All documents and communications with the TOB, TOBHA or any other governmental agency concerning the marketing and/or pricing of the rental units at Brookview.
>
> 11. All documents and communications concerning the application for financing for Brookview including all applications to the NYSDHCR, Housing Trust Fund, or any other governmental

> agency or financial institution which has supplied financing <u>to Brookview</u>.

Exhibit 1[1] (emphasis added).

Brookview is an affordable senior housing complex that WBP developed in 2002. It has absolutely nothing to do with the parties' claims against each other in connection with the Belmont Villas project and none of the parties to this action had any involvement in Brookview. As explained in the accompanying Affidavit of Robert H. Wilder, Jr., WBP's Chairman, the request for documents related to Brookview is entirely improper.

A review of his Answer to Amended Counterclaims and Counterclaim readily reveals that Conde has asserted counterclaims against the Defendants for (1) Defamation, (2) False Light Invasion of Privacy and (3) Vexatious Litigation. It is inconceivable how any documents in WBP's possession concerning Brookview could even potentially have any bearing on or relevance to Conde's counterclaims. The Defendants' counterclaims against Conde are claims for fraud and aiding and abetting fraud in connection with the Belmont Villas project. Just like with respect to Conde's counterclaims against the Defendants, any documentation in WBP's possession concerning <u>its</u> completed Brookview project has absolutely nothing to do with any claims asserted by the Defendants against Conde.

Respectfully, Conde's issuance of the Subpoena to WBP is a clear example of an abuse of the discovery process. For Conde to even make a demand for this information is sanctionable, as it is clearly not relevant in any way, shape or form to the facts and circumstances at issue in this case involving Belmont Villas. <u>See</u> Fed. R. Civ. P. Rule 45(c)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing

---

[1] All Exhibits referred to herein are annexed to the Affidavit of Joshua E. Kimerling, to which the Court is respectfully referred.

undue burden or expense on a person subject to the subpoena. The issuing court <u>must enforce this duty and impose an appropriate sanction</u>--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply").

Here, by cavalierly demanding (and insisting on when advised by WBP's counsel that his Document Requests were overly broad and unduly burdensome) that WBP comb through literally thousands of documents in connection with its Brookview project, which was completed eight years ago and has absolutely nothing to do with the parties' Belmont Villas project is, respectfully, sanctionable. If forced to comply with Document Requests 7 through 11, WBP would be forced to spend tens of thousands of dollars having its employees compile the documents and its attorneys review the documents for privilege, relevance, etc. WBP would be forced to incur this expense even though none of the documents that would ultimately be produced would have any bearing whatsoever on this litigation. See <u>Concord Boat Corp. v. Brunswick Corp.</u>, 169 F.R.D. at 49 (S.D.N.Y. 1996) ("the status of a witness as a non-party to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience'").

Document Requests 7 through 11 of the Subpoena go beyond any reasonable attempt to identify documents pertinent to the counterclaims asserted by or against Conde. In light of the foregoing, it is respectfully submitted that the Subpoena should be quashed, or, alternatively, and at the very least, that the Subpoena should be modified so as to strike Document Requests 7 through 11 in their entirety. See <u>Salvatorie Studios, Int. v. Mako's Inc.</u>, 2001 WL 913945 (S.D.N.Y. 2001) (motion to quash non-party subpoena granted where the documents requested were irrelevant to the action); see also <u>Night Hawk Ltd. v. Briarpatch Ltd., L.P.</u>, 2003 WL 23018833 (S.D.N.Y. 2003).

### B. Conde's Remaining Document Requests Are Manifestly Overbroad, And Compliance Therewith Would Place An Undue Burden on WBP

Conde's remaining Document Requests also warrant the quashing of his Subpoena, as these remaining Document Requests are either overly broad, do not provide a precise description of the particular type of documents sought and/or unduly burdensome on WBP.

*(i)    Document Request 1, 2 and 4 are manifestly overbroad and improper.*

Here, Document Requests 1, 2 and 4 of the Subpoena are particularly overbroad, demanding that WBP produce the following:

> 1. All documents and communications concerning Belmont Villas.
>
> 2. All documents and communications between or among you and any Party, (or their representatives), Greyhawk, the IDA, TOB, Broker, TOBHA, Conifer, any governmental agency or their representatives concerning Conde, Saepia, Chord, Jopal Enterprises or Jopal Associates.
>
> 4. All documents and communications concerning the status of Belmont Villas at any time, including, but not limited to, any meetings, meeting minutes, recordings, internal memoranda, correspondence, reports, and diaries.

Exhibit 1.

Respectfully, these requests go beyond any reasonable attempt to identify documents pertinent to the counterclaims asserted by or against Conde. Document Request 1 is a demand that WBP produce <u>any</u> documents in its possession concerning Belmont Villas without any limitation in scope as to the type of document, the time period involved or any other limitation. Document Request 4, "limited" to <u>all</u> documents concerning the "status" of Belmont Villas, which really is no limitation at all, is equally and manifestly overbroad. The Courts have "rejected such vague requests for documents because they are 'guaranteed to produce

8

information which would not even meet the broad standard of relevancy [underlying the discovery rules].'" Concord Boat Corp., 169 F.R.D. at 51, citing United States v. International Bus. Mach. Corp., 72 F.R.D. at 83 (S.D.N.Y.1976); see also In re Honeywell Intern., Inc. Securities Litigation, 230 F.R.D. 293 (S.D.N.Y. 2003) (document production request of shareholder plaintiffs via subpoena, to compel production of all communications in possession of non-party, public accountant for over two year period concerning corporation that it audited, was overly broad, in shareholders' lawsuit against corporation alleging violation of federal securities laws, since production request did not contain any limitation as to subject-matter or individual); 403-411 East 65th Street Corp. v. Ford Motor Co., 27 F.Supp. 27 (D.C.N.Y. 1939) (paragraphs of subpoena duces tecum commanding production at an examination before trial, of corporation's employee, of all documents, books and papers in possession of corporation relating to business of other corporate defendants and the causes of action set forth in the complaint were required to be quashed because they were too broad and unreasonable).

Document Request 2 demands that WBP produce any communication with, not only any party to this litigation, but myriad third parties as well. Respectfully, this demand also steps beyond the permissible scope of a non-party subpoena, as it overly burdens WBP with requests that have no bearing on the instant action. See Night Hawk Ltd. v. Briarpatch Ltd., L.P., 2003 WL 23018833 (S.D.N.Y. 2003) (it is incumbent upon party issuing subpoena to show that the documents sought are both relevant and material to the pending action).

The purpose of Rule 45 is not to swing open the flood gates to non-party subpoenas, but, instead, is to allow parties to obtain certain necessary information from various witnesses within reasonable bounds. In this case, Conde's Subpoena ignores both the language and the spirit of Rule 45, as Conde has clearly embarked on a fishing expedition that will reel in material with

little apparent or likely relevance, and without any consideration for the significant time and expense that WBP will have to devote in order to respond to his manifestly overbroad Document Requests. Concord Boat Corp., 169 F.R.D. at 51.

 (ii) *Document Request 5 Demands Information That Is Readily – And More Appropriately – Available From Other Sources*

Document Request 5 demands that WBP produce financial information pertaining to Belmont Villas, including "costs of construction, liens on Belmont Villas, and all other costs and/or expenses attributable or pertaining thereto." See Exhibit 1. This demand is entirely improper. WBP is not and never was the owner of Belmont Villas, nor was it at any time involved in the construction of Belmont Villas. Accordingly, for Conde to demand that WBP produce any information regarding construction costs pertaining to Belmont Villas is nonsensical. According to the Amended Complaint, Belmont Villas was 87% completed at the time the Defendants allegedly took control of the project from Plaintiffs. Surely, the parties are the appropriate source of information pertaining to construction costs for the Belmont Villas project.

Moreover, to the extent that Conde seeks information pertaining to any liens that were placed on Belmont Villas, certainly Conde can obtain this information from alternative sources. See e.g. In re Penn Central Commercial Paper Litigation, 61 F.R.D. 453. (S.D.N.Y. 1973). Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, 40 F.R.D. 318 (D.C.D.C.1966), affirmed 384 F.2d 979, 128 U.S.App.D.C. 10 (1967), certiorari denied 88 S.Ct. 334, 389 U.S. 952, 19 L.Ed.2d 361 (1967) (Necessity for production of documents is sharply reduced where an available alternative for obtaining desired evidence has not been explored); U.S. v. E. I. Du Pont De Nemours & Co., 14 F.R.D. 341 (N.D.Ill.1953) (Where material sought by subpoena duces tecum for use in rebuttal was available to government before trial, and government had means of acquiring

additional materials pertinent to issues long before and during presentation of its case in chief, and material sought would require considerable research and time, subpoena would be denied). In this regard, Conde can either order a title search on the property or peruse the county clerk records himself. With this information publicly available, Conde should not be entitled to compel a nonparty to this litigation to obtain this information for him.

  (iii) *Document Requests 3 and 4 Demand Information That Has No Bearing On The Counterclaims Asserted By Or Against Conde*

As discussed above, at one time WBP explored the possibility of acquiring the Belmont Villas project. However, and as also discussed above, that transaction was not consummated. Regardless, the contemplated acquisition of the Belmont Villas project by WBP has absolutely nothing to do with the counterclaims asserted by and against Conde, all of which are based on events occurring long before WBP expressed any interest in buying Belmont Villas.

Nonetheless, Document Requests 3 and 6 demand that WBP produce the following documents:

> 3. All documents and communications between or among you (and any entity on your behalf) and any Party (or their representatives), Greyhawk, the IDA, TOB, Broker, TOBHA, Conifer, any governmental agency, regulator or public organization concerning the proposed sale of Belmont Villas.
>
> 6. All documents and communications concerning the calculation of the value of Belmont Villas including but not limited to, any appraisal of Belmont Villas, internal memoranda, reports, correspondence, meetings and meeting minutes.

Exhibit 1.

Respectfully, these demands "bear no relation to the [] litigation, because they call for production of documents that are "wholly irrelevant to" Conde's counterclaims and the counterclaims asserted against Conde. See Concord Boat Corp., 169 F.R.D. at 53.

11

C&F: 1348638.3

In light of the foregoing, specifically, the fact that the Subpoena is manifestly overbroad, compliance with it would place an undue burden on WBP and the additional fact that many of the requests bear no relation to this litigation and call for production of documents with no direct relationship to the counterclaims asserted by and against Conde, it is respectfully submitted that this Motion to Quash the Subpoena should be granted in its entirety.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Court grant WBP's Motion pursuant to Rule 45(c)(3) of the Federal Rules of Civil Procedure and quash the Subpoena issued to nonparty WBP by Conde; or, in the alternative, to modify the Subpoena, and extend WBP's time to respond to any modified Subpoena; or, in the event that the original Subpoena is neither quashed nor modified, an extension of time to comply with the original Subpoena; and grant any and all such other, further and different relief that this Court deems just and proper.

Dated:   White Plains, New York
         May 7, 2010

_____
Joshua E. Kimerling (JK#0053)
Cuddy & Feder LLP
*Attorneys for Subpoenaed Non-Party
Wilder Balter Partners Inc.*
445 Hamilton Avenue - 14th Floor
White Plains, New York 10601
(914) 761-1300